**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NAIOMA WHITEHEAD,<br><br>    Plaintiff,<br><br>    vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | No. CIV S-03-1645-CMK<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Pursuant to the consent of the parties, this case is before the undersigned for final decision on plaintiff's motion for summary judgment (Doc. 8) and defendant's cross-motion for summary judgment (Doc. 10).

/ / /

/ / /

/ / /

/ / /

## I. BACKGROUND

Plaintiff applied for disability insurance ("DI") and supplemental security income ("SSI") benefits on November 21, 2000, based on disability.  In her applications, plaintiff claims that her impairment began on July 13, 1998.  Plaintiff claims her disability consists of a combination of collapsed bowels subsequent to radiation therapy to treat endometrial cancer, neck pain, back pain, and anxiety.   Plaintiff is a United States citizen born October 29, 1949, with a high school education and some college courses.

Plaintiff's claims were initially denied.  Following denial of her request for reconsideration, plaintiff requested an administrative hearing, which was held on September 6, 2002, before Administrative Law Judge ("ALJ") Mark C. Ramsey.

In his October 23, 2002, decision, the ALJ made the following findings:

1. The plaintiff meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits . . .;

2. The plaintiff has not engaged in substantial gainful activity since the alleged onset of disability;

3. The plaintiff has an impairment or combination of impairments considered "severe" based on the requirements in the Regulations, 20 C.F.R. §§ 404.1520(b) and 416.920(b);

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1;

5. The . . . plaintiff's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision;

6. The plaintiff has the following residual functional capacity: work at all exertional levels that involves little contact with the public and which includes access to bathroom facilities; the plaintiff has no exertional limitations;

7. The plaintiff is unable to perform any of her past relevant work;

8. The plaintiff is an "individual closely approaching advanced age;"

9. The plaintiff has "more than a high school . . . education;"

|     |     |     |
| --- | --- | --- |
| 1   | 10. | Transferability of skills is not an issue in this case; |
| 2   | 11. | Considering the types of work that the plaintiff is still functionally capable of performing in combination with the plaintiff's age, education, and work experience, she could be expected to make a vocational adjustment to work that exists in significant numbers in the national economy; examples of such jobs include work as a basket filler, table worker, and laundry worker; and |
| 5   |     |     |
| 6   | 12. | The plaintiff was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. |

Based on these findings, the ALJ concluded that plaintiff was not disabled and, therefore, not entitled to DI or SSI benefits. After the Appeals Council declined review on May 29, 2003, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." See Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In her motion for summary judgment, plaintiff argues that the ALJ erred in four ways in determining that she was not disabled.  Specifically, plaintiff argues: (1) the ALJ failed to consider a combination of all of plaintiff's impairments, finding as "severe" only her history of endometrial cancer with residual bowel and bladder incontinence and finding as "mild" her depression, thereby discounting the effects of most of plaintiff's impairments;[1] (2) the ALJ improperly rejected her testimony as not credible without providing legally sufficient reasons for doing so; (3) the ALJ improperly rejected or ignored the medical opinions of her treating physicians and examining professionals without providing legally sufficient reasons for doing so; and (4) the ALJ improperly applied the Medical-Vocational Guidelines ("Grids") at 20 C.F.R., Part 404, Subpart P, Appendix 2, in determining disability given plaintiff's extensive non-exertional limitations.

**A.**     **Combined Effect of Impairments**

In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.

---

[1]      The court notes that plaintiff limits this argument to the ALJ's consideration of her impairments at Step 2 of the sequential analysis in determining whether plaintiff had a "severe" impairment or combination of impairments.  Specifically, plaintiff does not argue that the ALJ failed to consider her impairments in combination when assessing residual functional capacity at Step 4 of the sequential analysis.

Plaintiff contends that, while the ALJ discussed each impairment individually and assessed whether an impairment standing alone was severe, the ALJ failed to consider the combined effect of all of her impairments on her ability to function. Having carefully studied the ALJ's decision, the court disagrees. The ALJ's decision clearly states:

> The medical evidence indicates that the claimant has a history of endometrial cancer with residual bowel and bladder incontinence, and mild depression with anxiety symptoms, <u>impairments that are severe within the meaning of the Regulations</u> but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

From this language, the court concludes that the ALJ properly considered all of plaintiff's impairments and that he, in fact, determined that they were severe in combination. The decision goes on to discuss under Step 3 of the sequential analysis whether each separate impairment meets or medically equals an impairment listed in the regulations. Moreover, the ALJ specifically found as follows: "The claimant has an impairment <u>or combination of impairments</u> considered "severe" based on the requirements of the Regulations . . ." Thus, plaintiff is simply wrong when she says that the ALJ did not find her combination of impairments severe at Step 2.

**B.     Plaintiff's Credibility**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See <u>Saelee</u>, 94 F.3d at 522. An explicit credibility finding must be supported by specific, cogent reasons. See <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See <u>id.</u> Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See <u>id.</u>

///

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See id. at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted).

The ALJ's decision in this case regarding plaintiff's credibility states as follows:

> At the hearing, the claimant alleged a worsening of her condition over the last 6 to 8 months. She alleged that she could not stand or walk for more than 10 minutes at a time. She states that she had frequent headaches which kept her bedridden for several days per week. She also states that she had liver pain and fatigue related to hepatitis C. However, these allegations are not credible for the following reasons.
>
> The record fails to provide documentation of a worsening condition. This is despite the fact that the undersigned provided the claimant and her representative with the opportunity to submit updated medical records after the hearing. The evidence provided (Exhibit 17F), shows no more than allegations of a long history of fibromyalgia which the claimant stated was aggravated by a recent fall (which had occurred the prior month). The record fails to show an earlier diagnosis of fibromyalgia or any clinical findings consistent with this diagnosis.
>
> The claimant has reported severe continuing neck and back pain, as well as knee pain. The claimant sustained an acute musculoskeletal injury in December 2000, but this improved by April 2001. She sustained another minor injury in July 2002, but this resulted in only very conservative treatment. The claimant has received no ongoing treatment for musculoskeletal pain. The record documents musculoskeletal pain complaints only intermittently and related to brief acute injuries. No diagnostic studies have been performed, and no aggressive treatment has been recommended. The claimant

has not been referred to a specialist for further evaluation of her musculoskeletal complaints.

The claimant had received some treatment for headaches, but this was intermittent and her headaches improved with medication. The record does not document that the claimant's headaches are experienced at such a frequency or degree as to preclude the performance of work activity within the established residual functional capacity.

The record also contains a diagnosis of hepatitis C, but it is described as asymptomatic. The record shows only skin lesions possibly related to hepatitis, but there is no indication that these lesions would result in work related limitations. The record does not document that the claimant has received any treatment for hepatitis C or symptoms related to this disorder other than the skin lesions.

It is noted that since her hysterectomy, the claimant's treatment has been routine and intermittent. There were times when she had gone for many months with no treatment. She had a brief period of mental health care, but this condition improved. She had some acute musculoskeletal injuries, but there was quick recovery and no indication of ongoing impairment. Her medications were effective in controlling her mild symptoms. Until her testimony at the hearing, the claimant's reported activities were essentially normal and included household chores, cooking, and shopping. The record provides no evidence of a worsening condition to corroborate the claimant's allegations of a severe decline in functioning six to eight months prior to the hearing. Accordingly, the claimant's testimony is not fully credible, and the limitations of the established residual functional capacity are the only restrictions supported by the record as a whole.

This detailed discussion clearly sets forth specific, cogent reasons supported by the record for finding plaintiff not credible. The ALJ did not discount plaintiff's subjective complaints <u>merely</u> because they were unsupported by the medical evidence. Quite the contrary, the record demonstrates that the ALJ considered a wide range of reasons for discounting plaintiff's credibility. Therefore, the court concludes that the ALJ properly found plaintiff not credible.

### C. Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>See</u> <u>Lester</u>, 81 F.3d at 830-31. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater

opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen, 80 F.3d at 1285; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

/ / /

/ / /

It is worth noting that plaintiff does not point to any particular place in the ALJ's decision where he rejected a medical opinion. Rather, plaintiff argues that the ALJ erred in this context because he ". . . did not even say the names of her treating medical providers."[2] Plaintiff appears to conclude that, because the ALJ did not mention her treating physicians by name, this means that the ALJ rejected a treating physician's opinion without specific and legitimate reasons. As defendant points out, the names of plaintiff's treating physicians are irrelevant. The ALJ's decision reflects that he considered all the medical evidence, including those of plaintiff's treating physicians (none of whom placed any restrictions on plaintiff's ability to work).

### D. Application of the Grids

The Grids provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations. See Jones, 760 F.2d at 998; see also Heckler, 461 U.S. at 462 n.5. Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on strength factors only. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2,

---

[2] The court notes that, other than Steven Greenleaf, M.D., the ALJ's decision does not mention any physician involved in this case by name.

§ 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities.[3] See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

The gravamen of plaintiff's argument is that she has non-exertional limitations which make application of the Grids inappropriate. Thus, the issue is whether plaintiff's non-exertional limitations impact her exertional capabilities. If there is substantial evidence in the record that they do not, then the ALJ properly applied the Grids and plaintiff's argument must be rejected. Here, plaintiff's non-exertional limitations are: (1) little to no public contact; and (2) access to bathroom facilities. The record reflects that the ALJ appropriately consulted a vocational source to determine whether these non-exertional limitations impact her exertional capabilities such that the Grids could not be used. The vocational evidence reveals that the job base for all exertional levels was not eroded by these non-exertional limitations. Given this evidence, the court concludes that there is substantial evidence in the record to support the ALJ's application of the Grids.

///

---

[3] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

    1.    Plaintiff's motion for summary judgment is denied;

    2.    Defendant's cross-motion for summary judgment is granted; and

    3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED:  September 29, 2005.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE